UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

MEGAN DELEON,

        Plaintiff,

v.                                 Case No.  8: 20-cv-2415-SCB-SPF

KILOLO KIJAKAZI,[1]
Acting Commissioner of the
Social Security Administration,

        Defendant.

_____/

## REPORT AND RECOMMENDATION

Plaintiff seeks judicial review of the denial of her claim for Supplemental Security Income ("SSI").  After reviewing the administrative record and the parties' arguments, the undersigned finds that the Administrative Law Judge's ("ALJ") decision was not based on substantial evidence.   The undersigned recommends that the Commissioner's decision be reversed and the matter remanded for further consideration.

### I.

### A.    Procedural Background

Plaintiff filed an application for SSI (Tr. 170-181).   The Commissioner denied Plaintiff's claims both initially and upon reconsideration (Tr. 63-72, 75-86).  Plaintiff then requested an administrative hearing (Tr. 106-108).  Per Plaintiff's request, the ALJ held a

---

[1] Kilolo Kijakazi became the Acting Commissioner of Social Security on July 9, 2021 and is substituted as Defendant in this suit pursuant to Rule 25(d) of the Federal Rules of Civil Procedure.

hearing at which Plaintiff appeared and testified (Tr. 1-28).  Following the hearing, the ALJ issued an unfavorable decision finding Plaintiff not disabled and accordingly denied Plaintiff's claims for benefits (Tr. 47-54).  Subsequently, Plaintiff requested review from the Appeals Council, which the Appeals Council denied (Tr. 29-31; 168).  Plaintiff then timely filed a complaint with this Court (Doc. 1).  The case is now ripe for review under 42 U.S.C. §§ 405(g), 1383(c)(3).

### B.   Factual Background and the ALJ's Decision

Plaintiff, who was born in 1988, claims disability beginning January 1, 2015 (Tr. 63).  Plaintiff obtained a high school education and attended a year and a half of college.  She has past relevant work experience as a cashier/checker, customer retail clerk, and server (Tr. 245).  Plaintiff alleges disability due to blurred vision, dizziness, left arm pain, left leg pain, and multiple sclerosis ("MS") (Tr. 171).

In rendering the administrative decision, the ALJ concluded that Plaintiff had not engaged in substantial gainful activity since April 6, 2018, the date Plaintiff filed her application for SSI (Tr. 49).  After conducting a hearing and reviewing the evidence of record, the ALJ determined Plaintiff had the following severe impairments: MS and borderline obesity (Tr. 49).  Notwithstanding the noted impairments, the ALJ determined Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (Tr. 49-50).  The ALJ then concluded that Plaintiff retained a residual functional capacity ("RFC") to perform light work except that she can occasionally climb, crouch, crawl, kneel, stoop [ ], and can never climb ladders, ropes, or scaffolds.  Additionally, she cannot

have exposure to open, unprotected heights.  She can stand/walk for about 6 hours in an 8-hoyr workday, as well as sit for about 6 hours total, all positions considering the usual breaks every two hours.  She can also have no exposure to vibration, cold, or loud noise. Moreover, the claimant can up to frequently perform overhead reaching with her left upper extremity (Tr. 50).  In formulating Plaintiff's RFC, the ALJ considered Plaintiff's subjective complaints and determined that, although the evidence established the presence of underlying impairments that reasonably could be expected to produce the symptoms alleged, Plaintiff's statements as to the intensity, persistence, and limiting effects of her symptoms were not entirely consistent with the medical evidence and other evidence (Tr. 50).

Considering Plaintiff's noted impairments and the assessment of a vocational expert ("VE"), the ALJ determined Plaintiff is capable of performing her past relevant work as a cashier/checker, customer retail clerk, and server (Tr. 53).  Accordingly, based on Plaintiff's age, education, work experience, RFC, and the testimony of the VE, the ALJ found Plaintiff not disabled since April 6, 2018, the date of her application (Tr. 54).

## II.

To be entitled to benefits, a claimant must be disabled, meaning he or she must be unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months.  42 U.S.C. § 423(d)(1)(A).  A "physical or mental impairment" is an impairment that results from anatomical, physiological, or psychological abnormalities, which are

demonstrable by medically acceptable clinical and laboratory diagnostic techniques.  42 U.S.C. § 423(d)(3).

The Social Security Administration, in order to regularize the adjudicative process, promulgated the detailed regulations currently in effect.  These regulations establish a "sequential evaluation process" to determine whether a claimant is disabled.  20 C.F.R. § 416.920.  If an individual is found disabled at any point in the sequential review, further inquiry is unnecessary.  20 C.F.R. § 416.920(a).  Under this process, the ALJ must determine, in sequence, the following:  whether the claimant is currently engaged in substantial gainful activity; whether the claimant has a severe impairment, i.e., one that significantly limits the ability to perform work-related functions; whether the severe impairment meets or equals the medical criteria of 20 C.F.R. Part 404 Subpart P, Appendix 1; and whether the claimant can perform his or her past relevant work.  If the claimant cannot perform the tasks required of his or her prior work, step five of the evaluation requires the ALJ to decide if the claimant can do other work in the national economy in view of his or her age, education, and work experience.  20 C.F.R. § 416.920(a).  A claimant is entitled to benefits only if unable to perform other work.  *Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987); 20 C.F.R. § 416.920(g).

A determination by the Commissioner that a claimant is not disabled must be upheld if it is supported by substantial evidence and comports with applicable legal standards.  See 42 U.S.C. §§ 405(g), 1383(c)(3).  Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305

U.S. 197, 229 (1938) (internal quotation marks omitted)); *Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996).   While the court reviews the Commissioner's decision with deference to the factual findings, no such deference is given to the legal conclusions. *Keeton v. Dep't of Health & Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994) (citations omitted).

In reviewing the Commissioner's decision, the court may not re-weigh the evidence or substitute its own judgment for that of the ALJ even if it finds that the evidence preponderates against the ALJ's decision.   *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983).   The Commissioner's failure to apply the correct law, or to give the reviewing court sufficient reasoning for determining that he or she has conducted the proper legal analysis, mandates reversal.   *Keeton*, 21 F.3d at 1066. The scope of review is thus limited to determining whether the findings of the Commissioner are supported by substantial evidence and whether the correct legal standards were applied.   42 U.S.C. § 405(g); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002).

### III.

Plaintiff challenges the ALJ's decision on three grounds.   First, Plaintiff claims the ALJ erred by failing to properly evaluate her MS pursuant to the requirements set forth under Listing 11.09.   Second, Plaintiff asserts the ALJ erred in failing to properly assess the opinions of her treating neurologist, Dr. Robertson, and the consultative examiner, Dr. Koney-Laryea.   Third, Plaintiff maintains that the ALJ's RFC finding is not supported by substantial evidence.   Because the Court agrees that the ALJ erred in evaluating Plaintiff's RFC, that issue will be discussed first.

5

### A. Residual Functional Capacity

Plaintiff contends the ALJ failed to properly evaluate her medical need for a hand-held assistive device when determining her RFC.[2]  Specifically, Plaintiff claims the ALJ erred by failing to include her need for a cane in contravention of Social Security Ruling 96-9p, which provides:

> To find that a hand-held assistive device is medically required, there must be medical documentation establishing the need for a hand-held assistive device to aid in walking or standing, and describing the circumstances for which it is needed (i.e., whether all the time, periodically, or only in certain situations; distance and terrain; and any other relevant information).  The adjudicator must always consider the particular facts of a case. …

SSR 96-9p, 1996 WL 374185, at *7 (1996).  This regulation provides that the use of a hand-held assistive device can erode the occupational base for sedentary work.  *Id.*  "Under SSR 96-9p, a claimant must present medical documentation (1) establishing her need for a cane or other device and (2) describing the circumstances for which it is needed."  *Charity v. Comm'r of Soc. Sec.*, No. 6:19-cv-1075-Orl-EJK, 2020 WL 5797623, at *3 (M.D. Fla. Sept. 29, 2020) (citation omitted).  Of course, absent such a showing, the ALJ is not required to include the use of an assistive device in the RFC or hypothetical to the vocational expert.  *Id.*  Courts have held that a prescription or lack of a prescription for an assistive device is not necessarily dispositive of medical necessity.  *See Kendrick v. Comm'r of Soc. Sec.*, No. 5:17-cv-244-Oc-18PRL, 2018 WL 4126528, *3 (M.D. Fla. July 9,

---

[2] The RFC is defined as the most a claimant can do despite his limitations.  20 C.F.R. §416.945(a)(1).  To determine a claimant's RFC, an ALJ makes an assessment based on all of the relevant evidence of record as to what a claimant can do in a work setting despite any physical, mental, or environmental limitations caused by the claimant's impairments and related symptoms.  20 C.F.R. §416.945(a)(1), (3).

6

2018) (report and recommendation adopted by 2018 WL 4112832) (M.D. Fla. Aug. 29, 2018).  In fact, courts in the Eleventh Circuit recognize that "[w]hen the record reflects a purported need for a hand-held assistive device, but the ALJ fails to affirmatively reject the need for such a device, the Court cannot be certain whether the ALJ intended to recognize it." *Williams v. Comm'r of Soc. Sec.*, No. 3:18-cv-764-J-MCR, 2018 WL 2511592, at *4 (M.D. Fla. June 18, 2019) (citing *Drawdy v. Astrue,* No. 3:08-cv-209-J-HTS, 2008 WL 4937002, at *4 (M.D. Fla. Nov. 17, 2008)).

In this case, as in *Williams,* the ALJ acknowledged Plaintiff's use of a cane, but failed to discuss whether it is medically necessary. *See Williams*, 2019 WL 2511592, at *4. At the administrative hearing, the ALJ questioned Plaintiff about her use of her cane. When asked whether she needs the cane when she stands, Plaintiff testified she "just feels more safe, because I have fallen many times" (Tr. 19).  When asked whether she can walk without the cane, she answered no (Tr. 21).  When the ALJ pressed Plaintiff about her need to use the cane, she said she prefers not to walk without the cane, is afraid of falling because her left side is not as strong, and prefers to have the cane or use a wall or grocery cart to lean on when walking (Tr. 17-22).  In his decision, the ALJ stated only that Plaintiff testified at the hearing that she "had difficulty walking without a cane" (Tr. 50).

In discussing Plaintiff's medical evidence, the ALJ noted that records from 2018 indicate she "had a cane but did not like to use it" (Tr. 51), and that records from 2019 indicate she "reported using a cane and can walk 25 feet in 20 seconds without a cane or crutch, but always needed some assistance (cane or crutch) if she wants to walk as far as three blocks" (Tr. 52).  The Court's review of the medical evidence reveals numerous

7

references to Plaintiff's use of a cane.  *See* Tr. 349 (February 2, 2017, has to focus more on her gait, uses cane for longer distances); Tr. 330 (January 18, 2018, has difficulty with ambulatory endurance and uses cane for longer distances); Tr. 441 (July 3, 2018, uses daughter's stroller or a shopping cart to help support herself, has a cane but does not like to use it); Tr. 444 (July 3, 2018, uses a cane or single crutch or some other form of support for walking all the time or part of the time, especially when walking outside); Tr. 432 (January 29, 2019, uses daughter's stroller to lean on when she walks); Tr. 435 (January 29, 2019, uses a cane or single crutch or some other form of support for walking all the time or part of the time, especially when walking outside); Tr. 428 (August 27, 2019 uses a cane or single crutch or some other form of support for walking all the time or part of the time, especially when walking outside); Tr. 480 (August 27, 2019, uses a cane or single crutch or some other form of support for walking all the time or part of the time, especially when walking outside).  Moreover, in rejecting Plaintiff's longtime treating neurologist's opinions concerning her mobility impairment, the ALJ cited to Plaintiff's "normal gait throughout the relevant period," but failed to discuss that her treating neurologist's records repeatedly document her difficulty ambulating without a cane and left-sidedness weakness that affected her mobility (Tr. 52).  In support of his RFC determination, the ALJ cited to Dr. Robertson's January 18, 2018 office note that described Plaintiff's gait as "normal, symmetrical," (Tr. 51).  However, the ALJ failed to discuss that the same note described Plaintiff as "need[ing] help walking long distances, uses a cane for long distances" (Tr. 329-330).

8

In sum, despite abundant documentary evidence referencing Plaintiff's use of a cane, the ALJ failed to affirmatively reject (or adopt) Plaintiff's medical need for this hand-held assistive device.  "While under certain facts and circumstances an individual using a medical required hand-held assistive device … can perform sedentary work, the Court is unable to determine whether such facts or circumstances exist in this case." *Wood*, 2021 WL 2634325 at *8.  Against this backdrop, the Court is unable to determine whether the decision is supported by substantial evidence, therefore remand is necessary.  *See Wood v. Comm'r of Soc. Sec.*, No. 6:20-cv-963-LRH, 2021 WL 2634325, at *7 (M.D. Fla. June 25, 2021) (remanding for further proceedings based on the ALJ's failure to adequately consider plaintiff's need for use of a cane); *Williams*, 2019 WL 2511592, at *4 (citing *Carter v. Astrue*, No. 3:10-cv-22-J-TEM, 2011 WL 4502024, at *10 (M.D. Fla. Sept. 28, 2011) (remanding with instructions for the ALJ to explicitly consider whether plaintiff required the assistance of a cane where the ALJ failed to affirmatively reject the plaintiff's alleged need for a cane).

### B.  Listing 11.09

Although the ALJ found Plaintiff's MS a severe impairment at step two, he concluded she "does not meet the requirements of Listing 11.09, Multiple sclerosis" at step three (Tr. 49).  In support, the ALJ indicated Plaintiff "does not have disorganization of motor function as described in section 11.04B; visual or mental impairment as described in sections 2.02, 2.03, 2.04, or 12.02; or evidence of significant, reproducible fatigue of motor function, with substantial muscle weakness on repetitive activity, demonstrated on physical examination, and resulting from neurological dysfunction in areas of the central

nervous system known to be pathologically involved by the multiple sclerosis process."

(Tr. 49-50).

Diagnosis alone is insufficient to meet a Listing. *See* 20 C.F.R. § 416.925(d).

Rather, to "meet" a Listing, a claimant must have a diagnosis including in the Listing and

must provide medical reports documenting that the conditions meet the specific criteria of

the Listings and the duration requirement. *Wilson v. Barnhart*, 284 F.3d 1219, 1224 (11th

Cir. 2002). The Listing for Multiple Sclerosis is characterized as follows:

> A. Disorganization of motor function in two extremities (see 11.00D1), resulting
> in an extreme limitation (see 11.00D2) in the ability to stand up from a seated
> position, balance while standing or walking, or use the upper extremities.
> OR
> B. Marked limitation (see 11.00G2) in physical functioning (see 11.00G3a), and
> in one of the following:
> 1. Understanding, remembering, or applying information (see 11.00G3b(i)); or
> 2. Interacting with others (see 11.00G2b(ii)); or
> 3. Concentrating, persisting, or manifesting pace (see 11.00G3b(iii)); or
> 4. Adapting or managing oneself (see 11.00G3b(iv)).

Listing 11.09.

Plaintiff argues that the ALJ's finding at step three was conclusory and

unsupported by substantial evidence. In support, she describes the hallmark symptoms of

MS (impaired gait, disorganization of motor functioning, vision problems, mental

limitations, and fatigue) and states that the ALJ failed to consider "the complexities of

[her] multiple sclerosis" (Doc. 20, pp. 15-17). However, Plaintiff cites to no particular

record evidence in order to prove that her impairments met all the criteria in section A or

B of Listing 11.09. In particular, she fails to point to any evidence establishing that she

had disorganization of motor function in two extremities resulting in an extreme

limitation in her ability to stand up from a seated position, balance while standing or

walking, or use the upper extremities, as required by subsection A of Listing 11.09. Similarly, Plaintiff fails to cite to evidence that she had marked limitation in physical functioning and in one of the areas of mental functioning in subsection B of Listing 11.09. Thus, she has not sustained her burden to prove she meets or equals Listing 11.09. *See Tucker v. Astrue*, No. 8:07-cv-621-T-TGW, 2008 WL 2811170, *5 (M.D. Fla. 2008) ("it is plainly insufficient for the plaintiff to quote the listing and then assert in a conclusory manner that it has been met, or equaled").

### C. Medical opinion evidence

Finally, Plaintiff alleges that the ALJ erred in weighing the medical opinion evidence.[3]  Specifically, Plaintiff contends that the ALJ erred in labeling Dr. Robertson's opinions "unpersuasive."  Plaintiff asserts that Dr. Robertson's medical records support his opinions and verify her cane use (Doc. 20, pp.25-27).  Plaintiff similarly questions whether the ALJ adequately considered Dr. Koney-Laryea's opinions.  She states the ALJ failed to mention whether, or to what degree, he found Dr. Koney-Laryea's opinions persuasive (Doc. 20, p.27).  Lastly, Plaintiff asserts the ALJ's statement that "[d]iagnostic testing, including an MRI of her brain was also within normal limits" is an unfair characterization of the medical evidence (Doc. 20, p.28).  As Plaintiff sets forth, an MRI on August 3, 2017 revealed "non-specific white matter lesions [that] could support a clinical diagnosis of multiple sclerosis" and an October 4, 2019 MRI revealed "[f]ew

---

[3] Because Plaintiff filed her application for benefits on April 6, 2018, the SSA's new regulations apply. *See* 20 C.F.R. § 416.920c (applying to claims filed on or after March 27, 2017).

scattered white matter T2 hyperintensities which appear unchanged when compared to [prior image]" (Tr. 321-323, 495-496).

As the Commissioner notes, the Court will "not decide the facts anew, reweigh the evidence, or substitute [its] judgment" for that of the ALJ. *Bloodsworth,* 703 F.2d at 1239. However, because remand is necessitated by the ALJ's failure to properly evaluate Plaintiff's RFC, the ALJ should also reconsider the persuasiveness of Drs. Robertson and Koney-Laryea's medical opinions in accordance with the SSA's new regulatory scheme on remand. *See Matos v. Comm'r of Soc. Sec.*, 2022 WL 97144, at *4 (11th Cir. Jan. 10, 2022).

**IV**.

Accordingly, for the foregoing reasons, it is hereby

RECOMMENDED:

1. The decision of the Commissioner be reversed and remanded for further proceedings in accordance with this opinion.

2. The Clerk be directed to enter final judgment in favor of Plaintiff and close the case.

IT IS SO REPORTED in Tampa, Florida, on this 27th day of January, 2021.

SEAN P. FLYNN
UNITED STATES MAGISTRATE JUDGE

**NOTICE TO PARTIES**

A party has fourteen days from this date to file written objections to the Report and Recommendation's factual findings and legal conclusions.  A party's failure to file written objections waives that party's right to challenge on appeal any unobjected-to factual finding or legal conclusion the district judge adopts from the Report and Recommendation.  See 11th Cir. R. 3-1.